UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

NEARY WILLIAMS                                    CIVIL ACTION

VERSUS                                            NO: 12-0816

SHRED-IT                                          UNITED STATES MAGISTRATE
                                                  JUDGE KAREN WELLS ROBY

ORDER & REASONS

Before the Court is Defendant, Shred-It-USA, Inc.'s,[1] ("Shred-It") **Motion for Summary Judgment (R. Doc. 56)**, seeking dismissal of all of Plaintiff, Neary Williams' ("Williams") claims under Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. §2000e, *et seq.*, and any other applicable laws or statutory provisions. (R. Doc. 56-4, p.1). The motion is unopposed. The Motion was heard on the briefs on Wednesday, October 2, 2013.

I.   Background

Neary Williams,[2] an African American male, commenced this Title VII employment discrimination claim on March 28, 2012, against Shred-It,[3] alleging claims of racial harassment, retaliation, retaliatory termination, failure to pay "last wages" and failure to pay overtime. *See* R. Doc.

---

[1] In Defendant's Motion for Summary Judgment, it contends that it is improperly named "Shred-It" but that the proper name is "Shred-it-USA, Inc." as stated above. *See* R. Doc. 56-4.

[2] Plaintiff was *pro se* at the time of the filing of this Motion for Summary Judgment. However, as of the present, Plaintiff is now represented by counsel. *See* R. Doc. 61.

[3] Shred-It-USA, Inc., is an international company that provides secure and confidential document destruction services.

29, p. 1-3, ¶¶ 4-8.[4] Williams also seeks liquidated damages for the failure to pay him for accrued vacation time, attorney fees, fringe benefits, back pay and damages for emotional distress. *Id.* Williams, a former Customer Service Representative ("CSR")[5], alleges that he was hired by Defendant on or around June 2, 2010, and remained employed with Defendant through January 2011, earning $14.25 hourly. *Id. See also,* p. 1, ¶ 3.

Williams alleges that by July, his supervisor, James Moore, began harassing him based on his race. *See* R. Doc. 29, p. 2, ¶ 4; R. Doc. 56-2. Specifically, Williams alleged that Moore yelled at him, wrote him up, followed him on his route and harassed him in other ways. *See id.* Furthermore, Williams and Moore were involved in a verbal altercation on September 30, 2013, which almost escalated to a physical altercation. R. Doc. 56-3, p. 187.  After this incident, Williams internally made a claim of discrimination which was investigated by the Human Resources Department, and dismissed as unfounded. *See* R. Doc. 56-3, p. 8, ¶18.

While neither the internal complaint or the investigatory file are attached as exhibits, Shred-It, through the affidavit of its District Manager, Robert Larry Lee, ("Lee") references the investigation, the substance of Williams complaint, the results of the investigation and the fact that it was investigated by an African American who was Shred-It's Human Resources Advisor.  *See* R. Doc. 56-3, p. 8-9, ¶¶18-20.

On October 4, 2010, Williams filed a charge of discrimination with the Equal Employment

---

[4] Plaintiff filed his initial complaint on March 28, 2012. *See* R. Doc. 1. Plaintiff filed two amended complaints, the first on September 5, 2012, and the second on October 5, 2012. *See* R. Docs. 26, 29. The allegations if the first two complaints do not substantially alter from those alleged in his second amended complaint.

[5] A customer service representative is an individual whose responsibilities included driving company owned shredding trucks, performing secure document destruction services at client sites, as well as generating and maintaining client relationships and sales for the company. *See* R. Doc. 56-3, p.9, ¶ 21. According to Shred-It's policy manual, CSR's are also responsible for conducting themselves in a professional and courteous manner, showing great concern for the customers needs for security and preservation of the material confidentially. *Lee Affidavit,* at ¶ 9.

Opportunity Commission ("EEOC"), which is not disputed. *See* R. Doc. 29, R. Doc. 56-3, p. 9, ¶21. According to Shred-It, Williams alleged in the EEOC charge that his supervisor "had yelled at him, that Caucasian CSR's received overtime opportunities to the exclusion of African American CSR's, that African American employees were allegedly not assigned permanent driving routes, and that he did not receive keys to the building." *Id.* at p. 9, ¶21.[6]

After he filed his EEOC Charge, Williams alleges that his supervisor "stepped up the harassment by accusing [him] of stealing time and breaching security." *See* R. Doc. 29, at ¶ 5. Before the filing of Williams' EEOC charge, he had five write-ups on file, all by Moore; and after the filing of Williams' EEOC charge, he had four more, again – all by Moore. *See infra,* n. 10-11. Between the time he filed the EEOC charge and his termination, two more written warnings were issued by Moore to Williams regarding his performance or violation of workplace policy. In the first instance, Williams had allegedly not taken direction from Moore, hung the phone up on him, and was allegedly non-responsive while on a route with a customer. Lee's affidavit provides that on the second instance, an employee of one of Shred-It's customers reported an incident that Williams was rude and aggressive towards a contract employee, and commented about his wages, which Shred-It believed constituted a security breach. *See* R. Doc. 56-3, ¶ 42.

In January 2011, Williams was terminated for allegedly soliciting business for his own business, and not for the company. *See* R. Doc. 29. Williams disputes Shred-It's allegation that he solicited business, and contends that he was actually fired in retaliation for having filed his EEOC charge against them. *See* R. Doc. 29. Shred-It, on the other hand, contends that it had a legitimate business reason to terminate Williams, which consisted of multiple instances of poor performance,

---

[6] The Court has not been provided with a copy of the EEOC Charge. These facts are supported however, by the Affidavit of Robert Lee, as cited above. The Defendant's Answer also supports that the EEOC issued "right to sue letters dismissing Charges of Discrimination "461-2011-00007 and 461-2011-00119 dated January 5, 2012." <u>See</u> R. Doc. 7, p. 1. ¶ 2.

breach of security, discourteous conduct both before and after his EEOC charge. *See* R. Doc. 63.

Shred-It seeks a dismissal of Williams' claims of racial discrimination, retaliation, retaliatory termination, failure to pay "last wages" and failure to pay overtime. *See* R. Doc. 29, p. 1-3, ¶¶ 4-8.[7] Shred-It contends that (1) Williams cannot establish that he was terminated due to race, but he was terminated due to his poor performance which is a legitimate business reason; (2) he is not due overtime wages, as they were paid in full; (3) he has not accrued vacation pay for 2011; and (4) Moore, his supervisor, did not harass Williams because he is black, as he was equally rude to employees and customers alike. The motion is unopposed.

## II.    <u>Standard of Review</u>

Federal Rule of Civil Procedure ("Rule") 56(a) states that a court may grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* A fact is "material" if resolving that fact in favor of one party could affect the outcome of the suit. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Poole v. City of Shreveport*, 691 F.3d 624, 626-27 (5th Cir. 2012).

"After the movant has presented a properly supported motion for summary judgment, the burden shifts to the nonmoving party to show significant probative evidence that there exists a genuine issue of material fact." *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (citation omitted). Here, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1076 (5th Cir. 1994). Although the Court must resolve factual disputes in favor of the nonmovant, the nonmovant must show

---

[7] Plaintiff's complaint is somewhat vague as to whether or not Count I is based on harassment or racial discrimination, or both. However, the Court finds that because Plaintiff states that he was "harrass[ed] based on race" and subject to allegedly being screamed at, written up and followed on his CSR routes, harassment is alleged in Count I. *See* R. Doc. 29, p. 1. Because Defendant has not moved this Court to consider the merits of the Plaintiff's harassment claims, any potential harassment claims of the Plaintiff are not the subject of this Order and Reasons.

more than "some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see Little*, 37 F.3d at 1075 (same).

In considering a summary judgment motion, the Court may consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits." Rule 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "A court may consider only *admissible evidence* in ruling on a summary judgment motion." *Mersch v. City of Dallas, Texas*, 207 F.3d 732, 734-35 (5th Cir. 2000) (emphasis added). Assertions presented in a statement of contested or uncontested facts "are not competent summary judgment evidence." *Metropolitan Wholesale Supply, Inc. v. M/V Royal Rainbow*, 12 F.3d 58, 61 & n.3 (5th Cir. 1994) (quoting *Abbott v. Equity Group, Inc.*, 2 F.3d 613, 619 (5th Cir. 1993). The Court may consider the admissibility of summary evidence *sua sponte*. *Bellard v. Goutreaux*, 675 F.3d 454, 460-61 (5th Cir. 2012).

The summary judgment standard in an employment discrimination matter is premised upon a burden-shifting analysis from *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), and its progeny. Thereunder, the Court must first determine if the plaintiff has established a *prima facie* case of discrimination, sufficient to raise an inference of discrimination. *Id.* at 802; *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-11 (2002) (finding that in Title VII actions, a *prima facie* standard is used for evidentiary purposes on summary judgment); *Powell v. Rockwell Int'l Corp.*, 788 F.2d 279, 285 (5th Cir. 1986) ("The *McDonnell-Douglas* formula . . . is applicable . . . in a . . . summary judgment situation.").[8]

"Establishment of a *prima facie* case in effect creates a presumption that the employer unlawfully discriminated against the employee." *Texas Department of Community Affairs v. Burdine*,

---

[8]Admittedly, *Swierkiewicz* has been widely distinguished by other circuits in the wake of *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). However, the Fifth Circuit has not yet joined these other circuits in distinguishing or otherwise limiting the holding of *Swierkiewicz*.

450 U.S. 248, 254 (1981); *see Turner v. Kansas City Southern Railway Co.*, 675 F.3d 887, 893 (5th Cir. 2012) (citing *Burdine*).  "The facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof required from respondent is not necessarily applicable in every respect to different factual situations."  *McDonnell*, 411 U.S. at 802 n.13.  "There is no doubt that vague or conclusory allegations of discrimination or harassment are not enough to survive summary judgment." *Huckabay v. Moore*, 142 F.3d 233, 241 (5th Cir. 1998).

## III.   Analysis

Williams alleges in his complaint that he was discriminated against and ultimately terminated as a result of his supervisor's hostile abrasiveness towards him, which included providing Caucasian CSR's with overtime opportunities, filing unfounded disciplinary warnings, and subjecting him to more frequent quality security control checks. He further alleges that he was denied accrued vacation pay.  *See* R. Doc. 29.[9]

Shred-It filed the subject motion contending that Williams' discharge was not due to his race, but instead his poor performance. Shred-It further alleges that Williams was not subject to an adverse employment action such that Count I should be dismissed.  *See* R. Doc. 56-4, pp. 2-3.

Title VII provides in relevant part that "it shall be an unlawful employment practice for an employer to ... discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion ... or national origin." 42 U.S.C. § 2000e–2(a)(1). To prevail on a discrimination claim, Williams must show, by preponderance of the evidence: (1) he is a member of a protected class; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) he was treated less favorably than a

---

[9] Williams attempts to divide his race discrimination claim from his harassment claim. Defendant's have only moved for summary judgment as to the race-discrimination claim asserted in Count I. Therefore, the Court construes Count I race discrimination and harassment claims as two separate and distinct claims. The Court shall only issue an Order on the merits of the race discrimination claim, which was raised in the subject motion.

similarly situated employee who is not a member of his protected class. *McDonnell–Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973). The *prima facie* case is necessarily a flexible standard that must be adapted to the factual circumstances of the case." *Turner v. Kansas City Southern Railway Co.*, 675 F.3d 887, 892 (5th Cir. 2012) (citations omitted).

      A.    <u>**Prima Facie Case**</u>

      Here, the parties do not contest the first two *McDonnell-Douglas* factors: (1) that as an African American, Williams is a member of a protected class, or that (2) he was qualified for his job position. *See* R. Doc. 56-4, p. 5-6. Shred-It contends however, that Williams' race discrimination claim fails because he has not suffered from an adverse employment action. *See* R. Doc. 56-4, p. 3.

      For purposes of a Title VII discrimination claim, " 'adverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating.'" *Turner v. Novartis Pharmaceuticals,* No. 10-0175, 2011 WL 901022, at *5 (E.D. La. Mar. 11, 2011); (citing *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007)(quoting *Green v. Adm'rs of Tulane Educ. Fund*, 284 F.3d 642, 657 (5th Cir. 2002)). An adverse employment action for purposes of Title VII does not include decisions made by an employer that serve only to limit an employee's opportunities for promotion but do not affect his job duties, compensation, or benefits. *Banks v. E. Baton Rouge Parish Sc. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003); *Davis v. Miss. Transp. Comm'n,* 618 F. Supp.2d 559, 564 (S.D. Miss. 2009). Title VII also does not intend to include other employment-related decisions that may "have some tangential effect on an ultimate employment decision, but are not ultimate employment decisions in and of themselves." *Jeffrey v. Dallas County Medical Examiner,* 37 F. Supp. 2d 525, 529 (N.D. Tex. 1999); (citing *Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 707 (5th Cir.), *cert. denied*, 522 U.S. 932 (1997).

      The Fifth Circuit has provided several examples of allegations that do not amount to an

7

ultimate employment decision. For example, hostility from fellow employees, having personal items stolen and the aftermath of such behavior does not amount to an ultimate employment decision. *Jeffrey,* 37 F. Supp. at 529; *Mattern,* 104 F.3d at 707. Denial of "administrative complaints and internal grievances," as well as informal criticisms, or changing an employee's work schedule or hours are "merely administrative decisions" that do not constitute an "ultimate employment decision as contemplated by Title VII." *Id. See Benningfield v. City of Houston,* 157 F.3d 369, 377 (5th Cir. 1998). However, formal reprimands that lead to termination or directly effect an employees compensation and or benefits, may constitute ultimate employment decisions. *Id.*

 Here, Williams alleges that he was "screamed at. . . [written up, through disciplinary and performance-based written warnings] and followed [i.e., subjected to 'quality control security checks,' while performing] his route," which ultimately led to his termination. *See* R. Doc. 29, p. 1, ¶4; R. Doc. 56-4, p. 6. However, Shred-It argues that on eight prior occasions, Williams was written up for company policy violations.

Shred-It provides documentation that Williams was written up for failing to complete his route per the complaint of a co-worker, that he exhibited poor behavior regarding a payroll issue, and for laying down on the job.[10] He was written up for complaining to a customer about his job, being involved in an intense verbal altercation with James Moore, his supervisor, failing to completely shred a customer's documents, and leaving them on the company truck, which also allegedly constituted a

---

[10] *See* R. Doc. 56-3, p. 11, ¶ 27-29; pp. 181, 183, 185. (1) August 4, 2010 – written complaint filed by co-worker for failing to complete his route; (2) August 10, 2010 – written complaint made by sales and office coordinator concerning Williams's behavior regarding a payroll issue; (3) August 23, 2010 – supervisor notified that Williams failed to answer phone calls and was lying down on boxes while on the job. Supervisor allegedly told Williams to return to work but Williams refused.

security violation.[11]

Williams was also written up for failing to finish a majority of his route, on one day, requiring the company to assign a co-worker to assist him. When his supervisor inquired about the incident, he stormed out of the room.[12] Additionally, Williams was written up when a customer alleged that Williams was rude and aggressive, which allegedly made one of its employees uncomfortable.[13] Finally, Williams allegedly gave his personal business card to solicit one of Shred-It's customers, for his own business, contrary to company policy.[14]

Based on these reprimands, Shred-It contends that Williams did not suffer an adverse employment action as all of these warnings and or complaints are "write-ups" that do not fall under the purview of Title VII's "ultimate employment decision." *See Cosgrove v. Greater New Orleans Expressway Com'n,* 1998 WL 915861, at *9 (E. D. La. Dec. 30,1998); quoting *Mattern,* 104 F.3d at 708.

The Court finds that Shred-It seems to conflate the issue of an adverse employment action and legitimate business decision. There is no dispute in the record that Williams was ultimately terminated. However, there is conflict regarding the reason Shred-It terminated Williams. Nonetheless, this Court

---

[11]*See id.*, at p. 12 ¶ 30-31; p. 187, 200, 202-03. (4) September 1, 2010 – Williams mistakenly called into Defendant's branch office and was heard complaining to a customer about being unhappy in his current employment position; (5) September 30, 2010 – engaged in verbal altercation which turned into physical altercation with supervisor which required assistance being broken up;  (6) October 15 - 17, 2010 – security breach for failing to shred documents and leaving them in the company truck. See id, at p. 199-210.

[12](7) November 16, 2010 – Williams failed to finish the majority of his route, causing another worker to have to take on extra work. When asked to meet about the incident with his supervisors, Williams abruptly stormed out of the meeting. See id, at pp. 12-13, ¶¶ 32-34; pp. 189, 191, 193. See also R. Doc. 56-4, p. 2.

[13] *See id.*, at pp.13-14, ¶¶ 35-36; see also R. Doc. 56-4, p. 2. November 22, 2010 – One of Defendant's largest customers reported and a written complaint was issued against Williams concerning his "rude, aggressive tone and demeanor and indicating that he was making staff members uncomfortable."

[14] *See id*., January 10, 2011 – another employee of Defendant, James Wood, reported Williams gave a business card for a personal outside business to one of Defendant's customers in violation of Defendant's conflict of interest policies.

finds that contrary to Shred-It's suggestion Williams suffered an adverse employment action, as it concedes that they fired him sometime in January 2011, which is also confirmed by Williams' complaint. *See* R. Doc. 29, ¶ 6.

### B.    Treatment of Similarly Situated Employees

Finally, in order to establish a prima facie case of discrimination, Williams must establish that he was treated less favorably than a similarly situated employee who is not a member of his protected class. *See McDonnell-Douglas, supra*. Shred-It contends that Williams has not and cannot point to any comparator evidence. Shred-It further contends that there is no record evidence that any other employee engaged in the same misconduct and was not terminated.

Williams alleges that by July, Moore, began harassing him based on his race. *See* R. Doc. 29, p. 2, ¶ 4; R. Doc. 56-2. Specifically, Williams alleged that Moore yelled at him, wrote him up, followed him on his route and harassed him in other ways. *See id.* Furthermore, the evidence submitted establishes that Williams and Moore were involved in a verbal altercation on September 30, 2013, which resulted in a screaming match between the parties. R. Doc. 56-3, p. 187. Shortly thereafter, Williams allegedly reported this discrimination by filing an internal complaint with its Human Resources Department. *Id.* p. 8, ¶18.

Lee, Shred-It's District Manager, states that Moore was equally abrasive to his subordinates without regard to race. *See* R. Doc. 56-3, p. 8-9. However, Lee's affidavit fails to meet the requirement of competent evidence of how similarly situated employees were treated.  In order for an affidavit to be admissible summary judgment evidence, it **must** be made **on personal knowledge**, set out facts that would be admissible in evidence, and show that the affiant is **competent** to testify on the matters stated. *Spring Street Partners-IV, L.P. v. Lam,* 730 F.3d 427 (5th Cir. 2013); *citing* Fed. R. Civ. P. 56(c)(4). *See also White v. Fox,* 470 Fed. App'x. 214 (5th Cir. 2012).

In order for Lee's affidavit to serve as competent testimony of how similarly situated employees are treated, it would have to demonstrate that Lee had personal knowledge of how Moore treated similarly situated CSR's in comparison to Williams.  *Turner v. Kansas City S. Ry. Co.,* 675 F.3d 887, 911 (5th Cir. 2012). *See also Haskins v. Nicholson,* 900 F. Supp. 2d 712, 727 (S.D. Miss. 2012); *Banks v. Leona Grp.,* 2010 WL 254960, at *2 (E.D.La. Jan. 19, 2010); *citing Lee v. Kansas City S. Ry. Co.,* 574 F.3d 253, 260 (5th Cir. 2009) (holding that to show that other employees are similarly situated, comparator evidence of other employees who were treated more favorably must be "'under nearly identical circumstances', which is satisfied when ' employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories'").

Lee's affidavit purports to establish that Moore had an abrasive personality and poor management skills with all his employees due to his military training, and that his actions were not targeted at Williams because of his race. *See* R. Doc. 56-3, pp. 236-239. However, Lee's affidavit fails to state how he knows that Moore treated both African American and Caucasian employee CSR's in the same manner, or that he had personal knowledge thereof; as his affidavit fails to point to a specific instance in which he observed Moore's handling of Shred-It's Caucasian CRS's. Further, Shred-It fails to present any other evidence that may be competent of the manner in which Moore treated similarly situated employees. As a result, the Court finds that there is a genuine issue of material fact as to whether there are similarly situated employees who were treated differently than Williams by Moore.

## C.    Retaliation (Counts II and III)

Shred-It next contends that Williams claim of retaliation should be dismissed because it had a legitimate business reason for terminating him.

Title VII provides that "[i]t shall be an unlawful employment practice for an employer to

discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter."  42 U.S.C. § 2000e–3(a).  In order to state a claim for retaliation, Williams must allege (1) he was engaged in protected activity, (2) he was subjected to an adverse employment action, and (3) there was a causal connection between the protected activity and the adverse employment action.  *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007).  A Title VII retaliation claim is also subject to the *McDonnell-Douglas* burden framework. See *Turner*, 2011 WL 901022, at *7; citing *Lemaire v Louisiana Dept. of Transp. & Dev.,* 480 F.3d 383, 393 (5th Cir. 2007).

### a.      Engaged in a Protected Activity

As to (1), "protected activities" include opposition of any unlawful employment practice, or, in connection with a Title VII proceeding, making "a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing." *See* 42 U.S.C. § 2000e–3(a); *Douglas v. DynDermott Petroleum Operations Co.*, 144 F.3d 364, 372 (5th Cir. 1998).  The fact that a Title VII complaint is ultimately proven fruitless is not the end of the inquiry; to satisfy the standard, Williams must demonstrate only a "reasonable belief" that Defendant was engaged in unlawful employment practices.  *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 348 (5th Cir. 2007).

Here, the parties do not contest that on September 30, 2010, Williams submitted a charge of discrimination to Defendant's Human Resources Department, and additionally to the EEOC. *See* R. Doc. 56-3, pp. 8-9, ¶ 19, ¶21.[15] Defendant, by its own admission, had actual knowledge of Williams' complaints. Accordingly, for purposes of summary judgment the Court finds that Williams has

---

[15]The Court has not been provided with a copy of the EEOC Charge. These facts are supported however, by the Affidavit of Robert Lee, as cited above. The Defendant's Answer also supports that the EEOC issued "right to sue letters dismissing Charges of Discrimination "461-2011-00007 and 461-2011-00119 dated January 5, 2012." See R. Doc. 7, p. 1. ¶ 2. However, Defendant's state that "[it] does not have sufficient information to admit or deny when Williams received those letters. *Id.*  Therefore the EEOC's investigatory findings have not been provided to the Court.

satisfied the first element of his *prima facie* case of retaliation.

### b.    Suffered an Adverse Employment Action

As to (2), the Court finds that Williams'  employment was terminated on January 21, 2011. As set forth above, the Court finds that termination is an adverse employment action for purposes of Title VII. *See Harrison v. Corrections Corporation of America*, 476 F. App'x 40, 45 (5th Cir. 2012); *Kent v. Vicksburg Healthcare, LLC*, 2012 WL 1556511, at *12 (S.D. Miss. Apr. 30, 2012) ("[D]ismissal is obviously an adverse employment action."); ( *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir.2007); *Turner v. Novartis Pharmaceuticals*, 2011 WL 901022, at *5 (E.D.La. Mar. 11, 2011) (Roby, M.J.) ("[A]dverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating.")

Here, the Court finds that there is no dispute that Williams was terminated, therefore the second element of Williams' *prima facie* case of retaliation is satisfied. However, the record shows that after Williams submitted his complaint of discrimination pointing to Moore, Moore wrote three additional warnings against him for performance issues. Whether these write ups were the result of a legitimate business reason or retaliation is a question of material fact, as the affidavit of Lee alone, is not competent evidence to establish that Moore had no racial or retaliatory motive when reprimanding Williams. *See e.g., Hyatt v. CNG Prod. Co.,* 1992 WL 329654, *4 (E.D. La. Nov. 3, 1992). *See also EEOC v. Premier Operator Serv's., Inc.,* 75 F. Supp.2d 550, 558-59 (N.D. Tex. 1990) (where the Court denied Defendant's Motion for Summary Judgment after the EEOC established a *prima facie* case, on the grounds that the evidence presented in the record did not resolve the genuine issue of material fact as to whether Defendant's asserted legitimate non-discriminatory business reasons for implementing an "English Only" policy).

Therefore the Court finds that because of the existence of these material facts, Shred-It's

Motion for Summary Judgment must be denied.

D.    **Count IV - Non-Payment of Earned Compensation "Last Wages"**

Shred-It contends that Williams' non-payment of earned compensation claim should be dismissed because he had not accrued two weeks of vacation pay at the time of his termination. Further, Shred-It contends that Williams was paid in full at the time of his termination. *See* R. Doc. 56-4, p. 4. The evidence shows that when Williams was offered the job with Shred-It, his offer letter provided that he would accrue ".84 days of vacation per month [he worked]" during the remainder of 2010. *See* R. Doc. 56-3, pp. 164, 172-74.  The letter also provided that Williams would be entitled to "up to 10 [ten] days at an agreed upon time for the period of January 1, 2011 until December 31, 2011," which clearly pertained to his next year of employment. *Id.*

Williams's employment began on June 2, 2010, and was terminated sometime during January, 2011. *See* R. Doc. 29, p. 2. Shred-It attached the time cards and payroll records of Williams, which matched the pay stub records for the time he worked. *See* R. Doc. 56-3, pp. 122-143, 145-160. The time cards provided matched the payroll records for the time Williams worked.  As of November 7, 2010, Williams had accrued nearly 36.96 hours of vacation pay, and had fourteen hours of sick time. *See* R. Doc. 56-3, p. 136. On the November 21, 2010, payroll stub, Williams used and had been paid for ten hours of sick and vacation time that he had accrued, leaving a remaining balance of 30.04 hours vacation pay and 14 hours sick time. *Id.* at 137.

The next payroll stub, dated December 5, 2010, indicated that Williams used and had been paid for 60 hours of vacation pay, totaling $855.00, which left him with a negative balance of 16.88 hours. *Id.* at 139. This was supported by Williams's time cards, as Williams did not sign into his computer from November 20, 2010 through December 5, 2010.  Therefore, upon Williams's termination, as evidenced by his last payroll stub provided, a negative balance of 7.64 hours of vacation pay remained.

14

*Id.* at 143. Therefore, the Court finds that Williams was properly paid for the vacation time he accrued while employed for Shred-It for 2010. The Court further finds that for 2011, considering that Williams was terminated in January 2011, he had not begun to accrue actual vacation time for the 2011 year. Accordingly, Shred-It's Motion for Summary Judgment as to Count IV, is granted.

      E.    **Count V - Non-Payment of Overtime Wages**

      Williams's complaint alleges that he was not paid for overtime wages that were "due and owed" to him. *See* R. Doc. 29, p. 2. Shred-It contends that Williams was paid in full for all overtime hours he worked, therefore he is not owed any additional compensation. *See* R. Doc. 56-4, p. 15-17.

      The payroll records show that Williams worked a total of 151.76 overtime hours in 2010 and 4.38 overtime hours in 2011, before being terminated.  *See* R. Doc. 56-3, pp. 140, 143. According to Williams's payroll stubs, he was paid overtime wages for the hours he worked during his employment for Defendant.

      Based on Williams time card records,  which reflect that he worked approximately 126 hours and 9 minutes in overtime hours, which is less than the amount of hours his pay stubs indicated he was paid overtime hours, the Court finds that there is clearly no question that Williams was compensated for the overtime hours he worked. *See* R. Doc. 56-3, pp. 122-143, 145-160.[16] Therefore, the Court finds that as to Count V, Williams' claim of owed overtime wages, Shred-It's Motion for Summary Judgment is granted.

---

[16]Williams' time cards provide that he worked overtime as follows: June 21, 2010 through July 2, 2010, approximately 18 hours and 41 minutes of overtime**;** July 5, 2010 through July 16, 2010, approximately 8 hours and 7 minutes; July 19, 2010 through July 30, 2010, approximately 4 hours and 44 minutes; August 3, 2010 through August 13, 2010,  approximately 15 hours and 36 minutes; August 16, 2010, through August 27, 2010,  approximately 11 hours and 4 minutes; August 30, 2010 through September10, 2010, approximately 12 hours and 7 minutes; September 14, 2010 through September 24, 2010, approximately 3 hours and 53 minutes; September 27, 2010 through October 8, 2010, approximately 7 hours and 35 minutes; October 11, 2010, through October 22, 2010,  approximately 14 hours and 7 minutes; October 26, 2010 through November 5, 2010, approximately 16 hours 18 minutes; November 8, 2010 through November 19, 2010, approximately 7 hours and 14 minutes**;** December 6, 2010 through December 17, 2010, approximately 2 hours and 5 minutes; January 3, 2011 through January 14, 2011, approximately 4 hours and 38 minutes. Williams pay stubs indicate he was compensated $3,243.87 for 2010 overtime hours, and $93.62 for 2011overtime hours.

**IV.**     <u>**Conclusion**</u>

Accordingly,

**IT IS ORDERED** that the **Defendant's Motion for Summary (R. Doc. 56)** is **DENIED IN PART** and **GRANTED IN PART**.

**IT IS DENIED** as to Counts I and II, as to Williams' racial discrimination claims.

**IT IS FURTHER DENIED** as to Counts II and III, as to Williams' retaliation claims.

**IT IS GRANTED** as to Counts IV and V, as to Williams' non-payment of last wages claim and overtime compensation claim.

New Orleans, Louisiana, this 6th day of November 2013.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE**

16